UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11cv22-3-V
(5:09cr17)

| | | |
|---|---|---|
| DALE EUGENE ELLIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** comes before the Court on initial review of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1) and Respondent's Motion to Dismiss.[1] (Doc. No. 5). For the reasons stated herein, Petitioner's Motion to Vacate will be denied and dismissed and the Government's Motion to Dismiss will be GRANTED.

## I. PROCEDURAL HISTORY

On March 17, 2009, Petitioner was charged with distributing a controlled substance, that is cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1). (Crim. Case 5:09cr17, Doc. No. 35: Bill of Indictment). On July 30, 2009, Petitioner entered into filed a Plea Agreement in which he agreed to plead guilty as charged in the Indictment. (Id., Doc. No. 197: Plea Agreement). As part of the plea agreement, Petitioner acknowledged that he is a career

---

[1] On May 31, 2011 the undersigned, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advised Petitioner of his obligation to respond to the Government's Motion to Dismiss. (Doc. No. 6). Petitioner was specifically advised that his "failure to respond may result in granting a judgment on the pleadings for respondent, that is, in the dismissal of the Motion to Vacate with prejudice." (Id. at 2). Petitioner's response was due on or before July 1, 2011. No response has been received by the Court.

1

offender and further agreed that if the Probation Officer determined him to be a career offender, he would not contest that finding. (Id. ¶ 7f). The parties also stipulated "that neither party [would] seek a departure from the 'applicable guideline range'" and agreed to recommend a sentence at the bottom of the applicable guidelines range. (Id. ¶ 7g).

On August 5, 2009, the Petitioner appeared before Magistrate Judge David Cayer and plead guilty to Count One of the Bill of Indictment. (Crim. Case 5:09cr17, Doc. No. 46: Entry and Acceptance of Guilty Plea form). Judge Cayer engaged Petitioner in a lengthy colloquy to ensure that he understood the nature and consequences of the proceedings and his actions. (Id., Doc. No. 58: Transcript of Plea and Rule 11 Proceeding). During the plea colloquy, Petitioner affirmed under oath that he understood the elements of the offense to which he was pleading guilty and the maximum penalties he faced and that he was, in fact, guilty of the charged drug conspiracy. (Id., at 4, 7). Petitioner also affirmed that he understood how the Sentencing Guidelines might apply to his case, that he might receive a sentence that was either higher or lower than that called for by the Guidelines, and that even if his sentence was more severe than expected, he would nevertheless be bound by his plea and have no right to withdraw it. (Id. at 5-6). Petitioner also affirmed that he was waiving his right to a jury trial and to confront the witnesses against him, and that he was waiving his right to appeal and challenge his conviction or sentence in a post-conviction proceeding. (Id. at 9-10). Petitioner affirmed that no one forced him to plead guilty and that he was satisfied with the services of his attorney. (Id. at 10). The Court accepted Petitioner's plea finding that the plea was knowingly and voluntarily made and that Petitioner understood the charges, potential penalties and consequences of the plea. (Id. at 11).

Prior to Petitioner's sentencing hearing, the Probation Office submitted a Presentence Report ("PSR"). The Probation Officer calculated a base offense level of 12, based on the drug quantity. (Crim. Case 5:09cr17, Doc. No. 51: PSR ¶ 12). Because Petitioner had at least two prior felony drug convictions, his offense level became 32 pursuant to the career offender guideline set forth in U.S.S.G. § 4B1.1. (Id. at 18). With a three-level reduction for acceptance of responsibility, his total offense level became 29, which, combined with a criminal history category of VI, resulted in an advisory Sentencing Guidelines range of imprisonment of between 151 and 188 months. (Id. at 19, 20 and 63). Petitioner filed pro se objections to the career offender enhancement, asserting that "there was no harm violence or danger to the community in this case or any of the past. This stating the Rita, Gall, Kimbrough and Nelson § 3553(a)." (Crim. Case 5:09cr17, Doc. No. 50).

At Petitioner's sentencing hearing on March 1, 2010, Petitioner reaffirmed to the Court that he had entered a guilty plea to the distribution of cocaine as charged in the Bill of Indictment before Magistrate Judge Cayer on August 5, 2009; that he entered into a plea agreement with the Government; that he committed the charged offense; that his plea agreement was entered freely and voluntarily made with an understanding of the charge and the possible penalties; and that he was fully satisfied with the services of his attorney. (Crim. Case 5:09cr17, Doc. No. 59: Sentencing Transcript at 2). Pursuant to the stipulation of the parties concerning the factual basis for the plea, Petitioner's plea of guilty and his admissions, the Court found a factual basis for Petitioner's guilty plea and adjudged Petitioner guilty. (Id. at 3).

The Court then heard from the Petitioner regarding the PSR. Petitioner acknowledged that he had reviewed the PSR with counsel, specifically stating:

3

> Yes, sir, Your Honor. In the report, though, I had found a couple of mistakes that was in the report myself. Bust as I talked to Scott, he said that it really didn't matter, you know, the little mistakes that was made. But it was – they had it at half a gram, but which it was less than a half a gram. It was two-tenths of a gram.
>
> And then also they had ran, like – they had ran, like, three felonies separate that I had caught on one day and broke them down separate, but, you know, I don't really know too much about how the federal system works and all of that. But I do know that they say I was career offender. And I would just like to say that I hadn't been getting in no trouble since about, like, eight years to this date. I just would like for you to keep that in consideration.

(Id. at 3-4). The Court accepted Petitioner's statements for information purposes and inquired of counsel whether Petitioner's statements had the potential to affect the Guidelines. In response, Mr. Gsell stated:

> Your Honor, I've discussed the discovery with Dale and I've tried to show him how he's misunderstood and misinterpreted the discovery. And at the conclusion of those conversations, I can say that the presentence report as far as the drug quantity goes and the calculation of the guidelines with regards to his prior convictions, that that presentence report is correct in those calculations.

(Id. at 4). The Court then adopted the PSR for all purposes of sentencing, impliedly overruling Petitioner's objection, and found that the PSR accurately calculated the guidelines as offense level 29, criminal history VI, yielding a Guidelines sentencing range of 151 to 188 months' imprisonment. (Id. at 4-5). Defense counsel argued for a sentence in keeping with the plea agreement and the PSR, pointing out that while Petitioner had a record of prior convictions he had tried "his best to live a good, clean life" from 2005 until the time he had gotten caught for the instant offense. (Id. at 6). Counsel also pointed out that he and Petitioner had a good attorney/client relationship without any problems except for Petitioner's interpretation of the discovery. Id. Petitioner was given the chance to address the Court prior to sentencing and he

stated:

> I would just like to say, like I said before, I hadn't really been in no serious trouble since the year 2000 when my father passed away and I got out of prison in 2004 and tried to get straight. And a little incident happened, you know, when I was staying with my mother on account of a lady got stabbed. So therefore I went to go stay with my grandfather for a couple of days and that's when this action took place, this transaction. But it's been like eight years or so since I been involved in any kind of drug transaction or anything for that matter.
>
> And as far as a little bit amount of cocaine, I think it's kind of harsh, you know 188 months, 151 months for $20 rock. I mean, but it's all on account – you know, you're the judge. You decide how you feel like you should judge it. But I have a family and I was trying to straighten up. I just had a son. He's six months old right now and I ain't held him. I done seen him through visitation, you know, through the window. And he was born by me being incarcerated. And I planned on getting married and, you know, carrying on with my life straightforward, taking care of my kids like I always did. I'd just like for you to consider all of that too, Your Honor.

(Id. at 8-9). The prosecutor requested a sentence at the bottom of the Guidelines sentencing range pursuant to the plea agreement and stated that the Government would oppose a variance sentence based on Petitioner's recidivism. (Id. at 9-10). The Government also pointed out that while it had been eight years since Petitioner's last felony drug conviction, he had been convicted in 2006 of assault inflicting serious injury using a beer bottle and a wooden table causing contusions, head injuries, and dental problems to the victim. (Id. at 10-11).

The Court sentenced Petitioner to 151 months' imprisonment, noting that "the case stands out for the minimal amount of drugs, but the factors mentioned by the parties and the negotiations that led to the joint recommendation for a guideline sentence seem sufficiently compelling to justify the guideline sentence." (Id. at 11).

Petitioner did not appeal either his conviction or sentence. Instead, on February 4, 2011, Petitioner filed the instant Motion to Vacate alleging four claims of ineffective assistance of

5

counsel during the guilty plea and sentencing hearings.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether a petitioner is entitled to any relief. If the motion is not dismissed after that initial review, the court must direct the government to respond. Id. The court must then review the government's answer and any materials submitted by the parties and determine whether an evidentiary hearing is warranted pursuant to Rule 8(a). Following such review, it is clear to the Court that Petitioner is entitled to no relief on his claims; thus a hearing is not required. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. LEGAL DISCUSSION

**Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687-91, 104 S.Ct. 2052, 2064-66, 80 L.Ed.2d 674 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689, 104 S.Ct 2052.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639. 2648, 91 L.Ed.2d 197

6

(1986) (quoting United States v. Frady, 456 U.S. 142, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d at 1430-31 (4th Cir. 1983)). Therefore, if Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S.Ct. at 2069).

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

A petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983). Indeed, the petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea. Where defendant has pled, he must show that but for counsel's unprofessional errors, he would have gone to trial instead of pleading guilty. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct 366 (1985). In order to demonstrate an entitlement to relief when the claim involves a sentencing issue, Petitioner must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999).

7

### 1. Coerced Guilty Plea

Petitioner alleges that his counsel coerced him into pleading guilty by leading him to believe that he would receive a sentence below the Guideline range. The record of Petitioner's Plea and Rule 11 hearing belies Petitioner's claim that his guilty plea was coerced in any way. Indeed, during the Plea and Rule 11 hearing, Petitioner stated, under oath, that no one had made him any promises of leniency to induce him to plead guilty. (Crim. Case 5:09cr17, Doc. No. 58: Transcript of Plea and Rule 11 Hearing at 10). Further, Petitioner acknowledged that even if his sentence were more severe that expected, he would have no right to withdraw his guilty plea. (Id. at 5). Petitioner is bound by the statements he made at the Plea and Rule 11 hearing and his statements cannot be set aside merely on the basis of Petitioner's post-judgment assertions to the contrary. Rather, Petitioner's statements "constitute a formidable barrier" to this post-judgment attack. Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621 (1977); accord United States v. Lemaster, 403 F.3d 216, 220-23 (4th Cir. 2005) (affirming summary dismissal of §2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing).

Pursuant to Petitioner's plea agreement with the Government, the parties stipulated that they would both recommend a sentence at the bottom of the applicable guidelines range and that neither party would seek a departure from that range. (Crim. Case 5:09cr17, Doc. No. 45: Plea Agreement ¶ 7g). Based on this stipulation, Petitioner's claim that counsel led him to believe he would be sentenced below the Guideline range seems improbable. However, assuming that counsel did lead Petitioner to believe he might be sentenced below the Guideline range, to the extent such misinformation was clarified at the Plea and Rue 11 hearing, Petitioner cannot

establish prejudice. United States v. Foster, 68 F.3d 86, 888 (4th Cir. 1995) ("any misinformation [defendant] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [defendant] was not prejudiced."); United States v. Lamby, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*) ("if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely in the subsequent dialogue between the court and the defendant.") Here, regardless of counsel's advice regarding the sentence, Petitioner cannot establish prejudice because he was properly advised by the court during the Plea and Rule 11 hearing and he stated that he fully understood that the Court would not be able to determine his sentence until after the preparation of the PSR and that he could receive a sentence that was either higher or lower than that called for by the guidelines. Petitioner also stated that he understood that even if the sentence was more severe than he expected, or if the Court did not accept the Government's recommendation, he was still bound by the plea and could not withdraw his plea. (Crim Case 5:09cr17, Doc. No. 58 at 4-5). Finally, and fatal to Petitioner's claim, Petitioner does not allege that absent counsel's advice, he would have proceeded to trial instead of pleading to Count One of the Indictment. Petitioner has not established either prong of the Strickland test. Therefore his claim must fail.

### 2. Plea Agreement

Petitioner alleges that counsel advised him that the "debriefing material submitted by the government during plea negotiations was insufficient to establish the stipulation and that the defense would present evidence and an argument at the sentencing hearing to lower the offense relevant drug quantity conduct." (Doc. No. 1 at 6). Like the Government, the Court interprets

9

this allegation to be that Petitioner claims counsel advised him that the Government's discovery was insufficient to support the terms of the plea agreement and that counsel would allegedly argue at sentencing for a lower sentence based on the small drug quantity. The record does not support Petitioner's allegation.

Petitioner entered into a plea agreement, which constitutes a contact between the parties. "Under contract principles, a plea agreement necessarily 'works both ways. Not only must the government comply with its terms and conditions, but so must [the defendant].'" United States v. Williams, 510 F.3d 416, 422 (3rd Cir. 2007) (quoting United States v. Carrara, 49 F.3d 105, 107 (3rd Cir. 1995)).

Here, as part of his plea agreement, Petitioner stipulated that there was a factual basis for his guilty plea and that the Court could use the offense conduct set out in the PSR, except those facts to which the Petitioner objected, to establish a factual basis for Petitioner's guilty plea. (Crim. Case 5:09cr17: Doc. No. 45 ¶ 15). Petitioner also agreed that he was responsible for less than one gram of crack cocaine, that he was a career offender and, that if Probation Officer determined that he was a career offender, he would not contest that finding. (Id. ¶ 7a and f). Petitioner affirmed to the Court that he understood and agreed with the terms of the Plea Agreement and Petitioner's counsel acknowledged to the Court that he had reviewed each of the terms of the plea agreement with Petitioner and was satisfied that he understood the terms. (Crim. Case 5:09cr17, Doc. No. 58: Transcript of Plea and Rule 11 Hearing at 9-11). At Petitioner's Sentencing Hearing, Petitioner reaffirmed his plea agreement with the Government and his satisfaction with his counsel. Mr. Gsell advised the Court during the Sentencing Hearing that Petitioner misunderstood and misinterpreted the discovery, but also informed the Court that

10

the PSR was correct concerning the drug quantity and the calculation of the Guidelines well as Petitioner's prior convictions. (Id., Doc. No. 59: Transcript of Sentencing Hearing at 4). If counsel had challenged the facts supporting Petitioner's guilty plea, including his career offender status, and argued for a sentence lower than the bottom of the Guideline range, he would have breached the plea agreement and Petitioner would have lost the benefits of that agreement, including the three-level reduction for acceptance of responsibility. Without the three-level reduction for acceptance of responsibility, Petitioner's total offense level would have been 32, which when combined with his criminal history category of VI, would have generated a Guideline sentence of 210 to 262 months' imprisonment.

The record in this case including Petitioner's Plea Agreement and the transcripts of the Plea and Rule 11 hearing as well as the Sentencing hearing belie Petitioner's claim. Furthermore, Petitioner failed to file a response to the Government's Motion to Dismiss. Petitioner has not established either prong of the Strickland test and his claim must therefore be denied.

### 3. Interruption by Counsel at Sentencing

Petitioner alleges that during his attempt to explain to the Court his discussions with counsel, "Mr. Gsell cut into the conversation and told the judge that defendant doesn't fully understand the process and procedures." (Doc. No. 1 at 8). The Court has reviewed the transcript from Petitioner's sentencing hearing and it reveals no such interruption. Instead, the transcript shows that Petitioner addressed the Court concerning his review of the PSR, pointing out what he deemed as mistakes and asking the Court to take into consideration that he had not been in trouble in the past eight years. (Crim. Case 5:09cr17, Doc. No. 59: Sentencing Transcript

at 3-4). At the conclusion of Petitioner's comments to the Court, the Court asked Petitioner's counsel whether or not Petitioner's statements affected the guidelines. (Id. at 4). Counsel responded that he had discussed the discovery with Petitioner and that even though Petitioner had "misunderstood and misinterpreted the discovery," the PSR concerning the drug quantity and calculations in light of Petitioner's prior convictions were correct. (Id.). Counsel did not, as Petitioner claims, dismiss Petitioner or his concerns. Instead, Petitioner responded to the Court's specific question and was also an advocate for his client. Petitioner has not established either prong of the Strickland test and this claim is denied.

### 4. Leniency for Disparity Between Crack Cocaine and Powder Cocaine

As his last claim for relief, Petitioner alleges that his counsel was ineffective for failing to argue the disparity between crack cocaine and powder cocaine arguing that "due to the small amount of drugs involved this counsel have persuaded the district court that further leniency was appropriate." (Doc. No. 1 at 9). Petitioner argues that he was erroneously sentenced as a career offender because "there was no harm[,] violence or danger to the community done in this case or any of the past." (Id. at 15). Petitioner asserts that the career offender determination "puts [his] single transaction of a single crack rock . . . in a comparison with a kingpin in a drug conspiracy who is convicted of distributing kilos of drugs or a violence offender who uses firearms or threats [sic] of harm to commit a crime." (Id.). Petitioner concludes that his "current and prior convictions hardly constitute the [] type and pattern of offenses that would indicate that its [sic] been a career and life of drug trafficking [sic] and violence." (Id.). Petitioner's claim is not supported by the record or the case law.

First, Petitioner's claim that his current and prior conviction involved no harm, violence

or danger to the community is the exact pro se objection he filed to the PSR which was overruled by the Court. (Crim. Case 5:09cr17, Doc. No. 50). Petitioner's prior convictions were felony controlled substances, defined by U.S.S.G. § 4B1.2(b) as "an offense under federal law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution or dispensing of a controlled substance" or possession with intent to distribute the same. Harm, violence, and danger to the community are not required factors.

Next, during his allocution, Petitioner stated that he believed that 151 months was a harsh amount of time for a $20 rock. (Doc. No. 1 at 8). The Government responded that harshness was not a relevant factor as to whether the drug was crack cocaine, cocaine or any other drug because Petitioner's offense level was based on his career offender status. (Crim. Case 5:09cr17, Doc. No. 59: Transcript of Sentencing hearing at 10). The Government further stated that based on the aggravating factor of Petitioner's recidivism, the Government would oppose a variance sentence. (Id.). The Government also noted that while the administration belies that Congress and the United States Sentencing Guidelines Commission should eliminate the crack/powder disparity, no such change has in fact occurred. (Id.). In sentencing Petitioner, the undersigned was well aware of the drug quantity and noted that Petitioner's case stood out for the minimal amount of drugs but stated that the factors mentioned by the parties and the negotiations that led to the joint recommendation for a guideline sentence were sufficiently compelling to justify the guideline sentence. (Id., at 11). Therefore, while noting the unusually small quantity of drugs, the Court relied on other sentencing considerations, principally recidivism, to justify the sentence. Petitioner's arguments for leniency were presented by his counsel. (Id. at 5-8). Petitioner has presented no evidence that he did not qualify as a career offender nor has he

established either prong of the Strickland test in connection with his claim. Further, Petitioner chose not to file a response to the Government's Motion to Dismiss despite being directed to do so by the undersigned. For all of the reasons, Petitioner's claim is denied.

## IV. ORDER

**IT IS, THEREFORE ORDERED** that:

1. The Government's Motion to Dismiss is **GRANTED** (Doc. No. 5);

2. The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DENIED and DISMISSED;**

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

**SO ORDERED**.

Signed: August 10, 2011

Richard L. Voorhees
United States District Judge